**WHITE CONSOLIDATED INDUSTRIES, INC., Appellant/Cross Appellee,**

v.

**VEGA SERVO-CONTROL, INC., Appellee/Cross Appellant.**

Nos. 83–516, 83–548.

United States Court of Appeals, Federal Circuit.

July 25, 1983.

Ronald L. Wanke, Chicago, Ill., argued, for appellant/cross appellee; Jeffrey L. Clark, Chicago, Ill., on brief.

Ernie L. Brooks, Southfield, Mich., argued, for appellee/cross appellant; David R. Syrowik, Southfield, Mich., on brief.

Before MARKEY, Chief Judge, and FRIEDMAN and RICH, Circuit Judges.

MARKEY, Chief Judge.

White Consolidated Industries, Inc. (White) appeals from a judgment of the United States District Court for the Eastern District of Michigan that U.S. Patent No. 3,668,653 (the '653 patent) issued June 6, 1972 for a "Control System" was invalid and not infringed. The '653 patent issued on application serial number 769,500, filed October 22, 1968. Vega Servo Control, Inc. (Vega) cross appeals the denial of its motion for attorney fees under 35 U.S.C. § 285 or Fed.R.Civ.P. 37(c). We affirm.

*Background*

White sued Vega on May 23, 1979, charging that the manufacture and sale of Vega IIIG EIA and Vega IIIG CL systems infringed the '653 patent. Vega denied infringement and asserted that the patent was invalid.

Judge Cohn entered judgment in Vega's favor on August 18, 1982. In an opinion dated July 8, 1982, he held the patent invalid for failure to meet the enablement and best mode requirements of 35 U.S.C. § 112, and found that though the accused devices performed the same functions to achieve the same results, they did so in a substantially different way and that White had therefore failed to prove infringement.

Judge Cohn denied Vega's motion for attorneys fees on August 18, 1982, denied

White's motion to amend and supplement the findings on September 16, 1982, and denied Vega's motion for financial sanctions under Fed.R.Civ.P. 37(c) on October 26, 1982.

### The '653 patent

The '653 patent is directed to a numerical control (NC) system for machine tools.

In an NC system, a machine tool (e.g., mill head, drill bit) is placed under the control of a computer program. The program, termed a "part program," is a series of instructions which define the operations to be performed in machining a particular part. The program is created either manually, by writing the instructions directly in machine-readable form (i.e., machine code) or with the assistance of a computer. In the latter situation, the part program is written in a numerical control language using English-like words and abbreviations. Those English-like statements are put into a general purpose computer and there translated into machine code by a computer program, called a "processor" or "translator".

The numerical control processor may be a two-pass or single-pass processor. In the former, the first (processing) pass converts program statements into a set of machine-readable instructions, termed CL data, which defines the coordinate points to be followed by the tool in producing the part. The second pass manipulates those instructions, taking into account the particular characteristics and idiosyncrasies of the machine tool, to produce the machine code. A single pass processor produces the machine code in a single computer run, internally performing the "processing" and "post-processing" functions.

Once the part program is created, a punched tape containing the part program in machine readable form is produced and loaded into the NC device connected to the tool. Some systems eliminate the punched tape by linking the NC device to the computer.

White markets an NC system under the name "Omnicontrol". That system, the subject of the '653 patent, links the computer and machine tool and provides for two-way communication between the operator and the computer, so that the operator may dynamically (i.e., while the program is running) modify the controlling part program.

The '653 system also includes a universal input feature so that a single part program can be used to control a plurality of machine tools, thus eliminating the need to create a new part program for each tool. This feature is accomplished by writing the part program in a universal NC language (i.e., machine tool independent) and employing a language translator in the control system to translate the program into machine code to control the tool. Describing the language translator, the '653 patent reads:

> The language TRANSLATOR used in the RUN mode may be a known translator capable of converting, in a single pass, a part program in programming language form into a part program in machine language form, as for example SPLIT (Sundstrand Program Language Internally Translated). In the CONVERSATIONAL mode, where each source or language part instruction is individually translated into machine language form, the TRANSLATOR program is modified by the additions shown in FIG. 12.

At the time the application that resulted in the '653 patent was filed, SPLIT was a trade secret of Sundstrand, White's predecessor in interest, and was available only by purchase from Sundstrand.

In holding the '653 patent invalid, Judge Cohn determined that (1) the language translator was an integral part of the '653 system; (2) SPLIT was the only single pass language known to work in the '653 system at the time and was considered by the inventors to be the best mode; and (3) by failing to disclose SPLIT, the '653 patent failed of compliance with the enablement and best mode requirements of 35 U.S.C. § 112.

### Issues

(1) Whether Judge Cohn erred in holding the '653 patent invalid for noncompliance

with the enablement requirement of 35 U.S.C. § 112.[1]

(2) Whether Judge Cohn properly refused to award attorneys fees to Vega under 35 U.S.C. § 285 or Fed.R.Civ.P. 37(c).

## OPINION

### (1) *Enablement under 35 U.S.C. § 112*

35 U.S.C. § 112 requires that the invention be described "in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." White does not claim that SPLIT was disclosed, but rather that the specification contains an enabling disclosure notwithstanding its omission. White says the '653 patent calls for a known or standard single pass translator "as for example SPLIT" and specifies the characteristics of such a translator; that SPLIT was only an example; and that there were other known single pass translators interchangeable with SPLIT. White says because those other translators, e.g., ACTION and COMPACT, were known to those skilled in the art and available to them, the enablement requirement is satisfied.

■ We disagree. Though one may refer to an element of a claimed invention held as a trade secret by name only and yet satisfy 35 U.S.C. § 112 if equivalent elements are known, and known to be equivalents, and available to those skilled in the art, *In re Gebauer-Fuelnegg, et al.,* 50 USPQ 125, 28 Cust. & Pat.App. 1359, 121 F.2d 505 (1941), there is insufficient evidence here from which to conclude that suitable substitutes for SPLIT were known and widely available.[2] Testimony that ACTION and COMPACT were "take-offs" of, i.e., patterned upon, SPLIT, does not, for example, establish that those translators were known to be suitable substitutes for SPLIT. That other translators were available when the appli-

cation was filed is unavailing where there is no basis in the record for finding that a person skilled in the art on reading the specification would know that another single pass processor would be suitable. Indeed, the record here is to the contrary. The statements of Sundstrand, White's predecessor in interest, suggest that the inventors themselves (then employed by Sundstrand) originally considered SPLIT the *only* language suitable for operation in the "conversational" mode of the invention. Announcing Omnicontrol at a press conference held February 27, 1968, one week after the filing of the original application,[3] Sundstrand said:

> A key operating mode of this System is what we call "Conversational SPLIT Reprogramming". *This implies that the Sundstrand proprietary SPLIT Programming System is most compatible with the operating advantages of the System.*
>
> . . . .
>
> [T]here were (2) . . . modes of operation on the machine—one is the "run Mode", and this is where proven programs are fed directly to the machine to produce parts; and, . . . . The second, and the most unique operating mode, is called "Conversational". This mode is intended to allow a Parts Programmer to communicate directly with the computer so that on a nearly instantaneous basis the information to the machine can be modified, updated, corrected, or changed . . . .
>
> . . . .
>
> *The System is compatible with programs created by APT or other programming systems; however, we doubt at this time that these systems are compatible with instantaneous reprogramming by use of the "conversational" part of the System* . . . . [Emphasis added]

White's assertion that SPLIT was itself widely available, albeit only upon purchase

---

**1.** In view of our holding, we need not consider the correctness of the finding of noncompliance with the best mode requirement of § 112 or the finding of noninfringement.

**2.** Though White says Judge Cohn required "actual use" of SPLIT substitutes to establish en-

ablement, that is not the state of the law, and Judge Cohn did not so hold.

**3.** The application which matured into the '653 patent is a continuation in part of an application filed February 19, 1968.

from Sundstrand, misses the mark. The sine qua non of a valid patent is a full, clear, *enabling* description of the invention. *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 480, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974). Though the "language translator" by itself is not the claimed invention, it is an integral part of the disclosure necessary to enable those skilled in the art to "make and use the same." Were Sundstrand (now White) to maintain SPLIT as a trade secret, it could, as Judge Cohn noted, theoretically extend its exclusionary rights beyond the 17 year life of the patent by controlling access to SPLIT, a result inconsistent with the objectives of the patent system. Sundstrand was therefore obliged to disclose the details of SPLIT or some other language translator, unless suitable substitutes were known and available to those skilled in the art or unless a suitable substitute could be obtained without undue experimentation.

■ Respecting the latter alternative, White correctly says a disclosure is sufficient even if it would require that one skilled in the art conduct some experimentation. The amount of required experimentation, however, must be reasonable. *In re Brandstadter,* 484 F.2d 1395, 1404, 179 USPQ 286, 294 (CCPA 1973). Richard Stitt, a skilled programmer in the NC field, testified in this case that development of a single pass language translator would require from 1½ to 2 man years of effort, a clearly unreasonable requirement. Though White says that estimate is irrelevant because it concerns development of a commercially profitable single pass translator and suitable commercial translators were readily available, the language of the '653 patent, "a known translator ... as for example SPLIT", is insufficient to identify which language translators could be satisfactorily used and White presented no evidence that one skilled in the art would be able to select or develop a suitable translator without undue experimentation and delay.

It is immaterial that commercial use made, and publications issued, after the Oc-

tober 1968 filing date of the '653 patent may have established the suitability of other language translators (e.g., ACTION, ADAPT, APT, AUTOSPOT, COMPACT and UNIAPT).[4] A sufficient disclosure must exist as of the application filing date. *In re Glass,* 492 F.2d 1228, 1232, 181 USPQ 31, 34 (CCPA 1974). That the listed language translators were not specifically identified at that time as suitable substitutes for SPLIT renders futile their citation by White in this case.

White says APT's suitability was made known in July 1968, i.e., before the October filing date, by this announcement in "Metal Working News":

> In a status report on its Omnicontrol system *for on-line computer control of n/c machine tools,* Sundstrand Corp., here, discloses that the "conversational" reprogramming feature has been made compatible with APT-created part programs.
>
> Omnicontrol conversational reprogramming originally was restricted to Sundstrand's own split language.

That announcement supplies an insufficient basis, however, from which to infer that one skilled in the art would know that APT could be used as a direct substitute for SPLIT, particularly where the specification contains no mention of APT's compatibility. An announcement in a news magazine is inadequate proof of such recognized knowledge in the art as will excuse a failure to supply a fully enabling disclosure in a patent application. The same is true of these excerpts from a technical paper on the '653 system presented by one of the inventors in October 1968 to the IEEE Machine Tool Conference:

> The "run mode" will slave N/C programs created with APT and ... SPLIT.
>
> The System will allow the running of any other EDP program programmed in any acceptable language for the computer.... Also, simultaneously any machine can run in any variation of "Run"

---

**4.** After October 1968, Sundstrand provided a conversational APT translator to Pontiac Motors, which then used that translator in addition to SPLIT in its Omnicontrol system.

or "Conversational" modes and "apt" or "SPLIT" generated programs within the limitations of Sundstrand's version of conversational apt called "CON APT".

White has not demonstrated on this appeal that Judge Cohn erred in concluding that the '653 patent failed to meet the enablement requirement of 35 U.S.C. § 112.

(2) *Attorney Fees*

█ Vega says that because White brought this action knowing that the '653 patent lacked disclosure of SPLIT and knowing that SPLIT was a trade secret, this case is "exceptional" and thus entitles Vega to attorney fees under 35 U.S.C. § 285. Vega says an award of attorney fees is also appropriate under Fed.R.Civ.P. 37(c) in view of White's egregious denial during discovery that SPLIT was undisclosed and maintained as a trade secret.

The award of attorney fees is a matter within the discretion of the trial court. *See Faulkner v. Baldwin Piano & Organ Co.,* 561 F.2d 677, 685, 195 USPQ 410, 416 (7th Cir.1977). Vega has presented nothing that would warrant our upsetting the specific finding that White did not act in bad faith. There is here simply no basis for a determination that Judge Cohn abused his discretion in denying attorney fees under 35 U.S.C. § 285 or Fed.R.Civ.P. 37(c).

### Conclusion

No error having been shown, the judgment that patent No. 3,668,653 is invalid for failure to comply with the enablement requirement of 35 U.S.C. § 112 must be affirmed. No abuse of discretion having been shown, the denial of attorney fees sought under 35 U.S.C. § 285 and Fed.R.Civ.P. 37(c) must be affirmed.

AFFIRMED.