Opinion for the court filed by Circuit Judge NEWMAN.
Dissenting opinion filed by Circuit Judge PROST.
NEWMAN, Circuit Judge.
Plaintiffs Ateliers de la Haute-Garonne and F2C2 Systems S.A.S. (collectively “AHG”) filed suit against defendants Broetje Automation USA Inc. and Broetje Automation GmbH (collectively “Broetje”), asserting counts of patent infringement, trade dress infringement, unfair competition, and intentional interference with prospective economic advantage. Ateliers de la Haute-Garonne is a French company whose employees include Jean-Marc Auriol and Philippe Bornes, the inventors of the patents in suit.
AHG asserted two patents, United States Patent No. 5,011,339 (“the '339 patent”) issued April 30, 1991, and No. 5,143,-216 (“the '216 patent”) issued September 1, 1992, both entitled “Process for Distribution of Pieces such as Rivets, and Apparatus for carrying out the Process.” AHG alleged infringement of claims 1, 2, 3, and *1353 6 of the '339 patent and claims 1, 2, and 6 of the '216 patent. The patents claim priority to a French application filed on December 8, 1988, and relate to the dispensing of objects such as rivets through a pressurized tube with grooves along its inner surface, to provide a rapid and smooth supply of properly positioned rivets for such uses as the assembly of metal parts of aircraft. The invention “permits dispensing a very great number of pieces without risk of jamming in the tube and with a precise guiding permitting maintaining the alignment of the axes of the pieces.” Abstract, '339 patent, '216 patent.
On Broetje’s motion for summary judgment, the district court ruled, on September 26, 2011, that the claims in suit are invalid for failure to disclose the best mode of carrying out the invention, as required by 35 USC § 112 ¶ l.[1] Judgment was entered under Federal Rule 54(b); the court did not decide the other issues in the complaint, except for, on October 13, 2011, rejecting Broetje’s argument that AHG abandoned the '339 patent by failing to pay the issue fee.[2]
AHG appeals the judgment of invalidity on best mode grounds. Broetje cross-appeals, stating that the patent was abandoned. We reverse the judgment of invalidity, affirm that the patent was not abandoned, and remand for determination of the remaining issues.
I
The Best Mode
A
The specifications of the '339 and '216 patents include several drawings of embodiments of the grooved tube, and describe the operation of the invention as follows:
According to the present invention, the compressed fluid is admitted into the tube behind the last piece and is distributed along the length of the tube at the interior of at least one longitudinal passageway provided on the internal surface of said tube for opening into the hollow core thereof, such that the fluid pressure is exerted all along the hollow core in the spaces separating said pieces.
'339 patent, col.2 11.35—42.
Claim 1 of the '339 patent follows, with numbers and letters that refer to the drawings, as exemplified in Figures 1 and 2:
1. A process for dispensing identical pieces having a symmetry of revolution about an axis, comprising: providing a tube (2) having a hollow center (2a) and a shape corresponding to the transverse section of the greatest diameter of the pieces for assuring a peripheral guiding of said pieces at the level of this section, arranging the pieces one after another in the interior of the tube (2) with their axes of revolution extending along the longitudinal axis of said tube and feeding one end of said tube with a compressed fluid for assuring the transfer of the pieces toward an open dispensing end (2d) of said tube, admitting the compressed fluid into the one end of the tube behind the piece closest to said one end of the tube and distributing the fluid *1354 along the length of the tube through at least one longitudinal passageway (2b) on the internal surface of said tube and opening into the hollow center (2a) thereof for exerting the pressure of the fluid along the hollow center in the spaces (E) between the pieces, to the piece (IP) closest to the dispensing end on which said pressure acts for assuring the transfer toward the dispensing end (2d).
The specification defines “longitudinal passageway” as “a passageway extending in the direction of the length of the tube.” '339 patent, col.5 11.59-61. The issue of “best mode” relates to the number of such passageways or grooves, illustrated at 2b in Figures 1 and 2:
[[Image here]]
A transverse sectional view of the tube is shown in Figure 2, which is described as a Preferred Embodiment:
[[Image here]]
*1355 The specification states:
On the internal surface of the tube 2 are arranged three passageways such as 2b, angularly arranged at 120°, and which extend along the length of the tube. Each of these passageways opens into the hollow center 2a of the tube .along the length thereof.
'339 patent, col.4 11.44-48. The specification also includes drawings showing two grooves and multiple grooves.
Broetje, by motion for summary judgment, argued that the patents do not adequately disclose the inventors’ beliefs concerning the best mode, citing the following deposition testimony of inventor Auriol:
Q. Looking at [Figure] 2, does that also show the grooves?
A. Yes.
Q. And how many are there?
A. Three. You need an odd number.
Q. Why is that?
A. To avoid that the rivet turns on itself.
Q. Rotates?
A. So as to avoid that the stem of the rivets rotates too easily on itself.
ífc H'
Q. The tube that you machined to put grooves into back in 1988, can you remember what configuration or shape the inside of the tube had? A. We had three grooves, just like this, because for machining purposes it was easier to have just three. If we only had two grooves, there was a chance that the rivet would rotate on itself inside the tube because the stem of the rivet might go inside one of the grooves.
Q. Okay. Do you remember when you learned that you needed an odd number of grooves?
A. We realized that from the very beginning because it kept—if you have a groove here and you have a chance that the rivet might flip this way, if the rivet is very long, it will never rotate on itself. There won’t be an issue. But the problem is that you need to manage that relatively short rivets will not rotate, and to that end, of course, you don’t want them—you don’t want to give them'an opportunity to go through it. And with an odd number of grooves, you’re going to have the head of the rivet that’s going to— going to carry on to rest on the two 'grooves, and therefore, the stem of the rivet won’t be able to—won’t be able to go through in order to make sure that the rivet won’t rotate.
Auriol Dep. 40-45, July 29, 2011 (translation from French).
Inventors Auriol and Bornes provided sworn declarations stating that during development of the invention they tried different numbers of grooves and that “At the time of the foregoing patent applications ... we were mostly using three grooves. Sometimes and depending on the size of rivets, we used four or five grooves.” Auriol Decl. Sept. 1, 2011; Bornes Decl. Sept. 1, 2011.
Based on the inventors’ testimony, Broetje moved for summary judgment of invalidity for failure to disclose the best mode. ■ Broetje argued that “Mr. Auriol’s testimony was clear that he considered an odd number of grooves to be the best mode of carrying out the invention.” Broetje Summ. J. Br. No. 6 at 9. Broetje also argued: “The patents-in-suit do not adequately disclose what Mr. Auriol believed [w]as [t]he best mode. It is indisputable that the .patents-in-suit never say that use of an odd number of tubes is best.” Id. (emphases in original).
AHG responded that three grooves was the best mode known to the inventors when the application was filed, and that *1356 the three-groove embodiment was specifically described and thus adequately disclosed in the specification’s text and drawings. AHG stated that there was no concealment of a better mode than the three-groove embodiment shown in Figure 2, and that nothing in the inventors’ testimony departed from the description in the specification. AHG stated that the patents identified a “preferred embodiment” as having three grooves, that the patents correctly stated that other numbers of grooves may be used, and that no better mode was known to the inventors than was described in the specification.
The district court referred to Mr. Auriol’s testimony that an odd number of grooves is needed, and observed that the patent does not state that an odd number of grooves is better than an even number. The district court concluded that “inventor Mr. Auriol, possessed a best mode of practicing the claimed invention (i.e., an odd number of grooves) and did not adequately disclose this best "mode in the specification.” Order at 2. The court found that AHG had presented no evidence that a person of ordinary skill, on reading the specification, would know that an odd number of grooves is better than an even number, as inventor Auriol testified. The court stated, “the mere fact that AHG has disclosed an odd number ‘at all’ does not mean that the specification ‘adequately’ discloses Mr. Auriol’s odd-number best mode.” Sept. Op. at 21 (quoting Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1536 (Fed.Cir.1987)). The court thus concluded that “AHG’s identification of a lone embodiment that happens to share a trait in common with the inventor’s best mode is insufficient, without more, to avoid summary judgment.” Id.
In its summary judgment determination the district court stated that, “the clear weight of Federal Circuit authority holds that intentional concealment is not required for best mode violations....” Id. at 11 (emphasis in original). The court concluded that the “patents-in-suit are ‘so objectively inadequate as to effectively conceal the best mode from the public,’ such that a reasonable jury could not find in AHG’s favor with respect to Broetje’s ‘odd number’ theory” and granted the Broetje motion for summary judgment. Sept. Op. at 23 (quoting U.S. Gypsum Co. v. Nat'l Gypsum Co., 74 F.3d 1209, 1215 (Fed.Cir.1996)) (emphasis in original).
B
An issue may be decided by summary judgment when no question of material fact is in dispute, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), or when the nonmovant cannot prevail as a matter of law, even on its view of the facts and evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Allied Colloids, Inc. v. American Cyanamid Co., 64 F.3d 1570, 1573 (Fed.Cir.1995). The court must view the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255, 106 S.Ct. 2505. On appellate review of the grant of summary judgment, we apply the same standard as did the district court. Seal-Flex, Inc. v. Athletic Track & Court Constr., 98 F.3d 1318, 1321 (Fed.Cir.1996). To invalidate a patent on summary judgment, the moving party must submit such clear and convincing evidence of invalidity that no reasonable trier of fact could find otherwise. Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed.Cir.2001).
35 USC § 112 ¶ 1 requires that the specification “shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.” To establish violation, it must be shown that the inventor possessed a better *1357 mode than was described in the patent, and that such better mode was intentionally concealed. “First, the court must determine whether the inventor possessed a best mode of practicing the claimed invention at the time of filing the patent application. This first step is subjective and focuses on the inventor’s preference for a best mode of practicing the invention at the time of the application’s filing date. The second step is an objective inquiry to determine whether the inventor concealed from the public the best mode of practicing the invention.” Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1373 (Fed.Cir.2011) (internal citations omitted). “If the inventor in fact contemplated such a preferred mode, the second part of the analysis compares what he knew with what he disclosed—is the disclosure adequate to enable one skilled in the art to practice the best mode or, in other words, has the inventor ‘concealed’ his preferred mode from the ‘public’?” Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 928 (Fed.Cir.1990).
Violation requires intentional concealment; innocent or inadvertent failure of disclosure does not of itself invalidate the patent. Wellman, Inc. v. Eastman Chem. Co., 642 F.3d 1355, 1365 (Fed.Cir.2011) (“Invalidation based on a best mode violation requires that the inventor knew of and intentionally concealed a better mode than was disclosed.”) (quoting High Concrete Structures, Inc. v. New Enter. Stone & Lime Co., 377 F.3d 1379, 1384 (Fed.Cir.2004)); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 381 F.3d 1371, 1378 (Fed.Cir.2004) (“The best mode requirement differs from the enablement requirement, for failure to enable an invention will produce invalidity whether or not the omission was deliberate, whereas invalidity for omission of a better mode than was revealed requires knowledge of and concealment of that better mode.”); Brooktree Corp. v. Advanced Micro Devices, 977 F.2d 1555, 1575 (Fed.Cir.1992) (“[V]iolation of the best mode requires intentional concealment of a better mode than was disclosed.... That which is included in an issued patent is, ipso facto, not concealed.”); Engel Indus., Inc. v. Lockformer Co., 946 F.2d 1528, 1531 (Fed.Cir.1991) (“Patent invalidity for failure to set forth the best mode requires that (1) the. inventors knew of a better mode of carrying out the claimed invention than they disclosed in the specification, and (2) the inventors concealed that better mode.”); Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384-85 (Fed.Cir.1986) (“Because not complying with the best mode requirement amounts to concealing the preferred mode contemplated by the applicant at the time of filing, in order to find that the best mode requirement is not satisfied, it must be shown that the applicant knew of and concealed a better mode than he disclosed.”); In re Sherwood, 613 F.2d 809, 816 (CCPA 1980) (“[Evidence of concealment (accidental or intentional) is to be considered.”); In re Nelson, 47 CCPA 1031, 280 F.2d 172, 184 (1960) rev’d on other grounds, In re Kirk, 54 CCPA 1119, 376 F.2d 936 (1967) (“There always exists, on the part of some people, a selfish desire to obtain patent protection without making a full disclosure, which the law, in the public interest, must guard against. Hence ... the ‘best mode’ requirement does not permit an inventor to disclose only what he knows to be his second-best embodiment, retaining the best for himself.”)
The requirement that a best mode violation requires intentional concealment was set forth in In re Gay, 50 CCPA 725, 309 F.2d 769, 772 (1962) where this court’s predecessor explained, “Manifestly, the sole purpose of [the best mode requirement] is to restrain inventors from applying for patents while at the same time concealing from the public preferred em *1358 bodiments of their inventions which they have in fact conceived.”[3]
The district court erred in law, in stating that concealment occurred although the preferred embodiment was disclosed, and that any omission need not be intentional to invalidate the patent on best mode grounds. The issue here is not of written description or enablement or any other aspect of § 112; the sole challenged aspect relates to the disclosure of the best mode, based on inventor Auriol’s testimony that an odd number of grooves is better than an even number.
At the time the patent application was filed, the inventors primarily used a three-groove tube, as shown in Figure 2 and described as a preferred embodiment. The issue of compliance with the best mode requirement is focused on the inventor’s belief at the time of filing the patent application. Northern Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1286 (Fed.Cir.2000). The best mode requirement is satisfied when the inventor includes the preferred mode in the specification. “There is no requirement in 35 USC 112 that an applicant point out which of his embodiments he considers his best mode; that the disclosure includes the best mode contemplated by the applicant is enough to satisfy the statute.” Randomex, Inc. v. Scopus Corp., 849 F.2d 585, 589 (Fed.Cir.1988).
The three-groove embodiment pictured in Figure 2 is described in the specification as a preferred embodiment. It is not disputed that the three-groove passageway was the best mode then known to the inventors. There was no evidence that they knew of a better mode. No inaccuracy or misleading information is identified. Although Broetje argues that the inventors had different theories of the best mode, it is not disputed that the preferred embodiment when the patent application was filed was the three-groove embodiment that the specification describes as preferred.
The inventors’ testimony is in accord with the patents’ disclosure. Mr. Auriol testified that “you need an odd number” of grooves, pointing to the three grooves in Figure 2 and explaining that “[i]f we only had two grooves, there was a chance that the rivet would rotate on itself inside the tube because the stem of the rivet might go inside one of the grooves.” Auriol Dep. 44, July 29, 2011. He explained that “if the rivet is very long, it will never rotate on itself. There won’t be an issue. But the problem is that you need to manage that relatively short rivets will not rotate .... ” Id. Mr. Auriol and Mr. Bornes testified that “Sometimes and depending on the size of rivets, we used four or five grooves.” Auriol Decl. Sept. 1, 2011; Bornes Decl. Sept. 1, 2011. The record states that this experimentation continued for several years after the patent application was filed.
The inventors testified that after several years of development a five-groove tube was selected for commercial sale. Howev *1359 er, it was not disputed that at the time the patent application was filed, the three-groove tube was the preferred embodiment. The issue is whether the inventors knew of and deliberately concealed a better mode than they disclosed. Wahl Instruments, Inc. v. Acvious, Inc., 950 F.2d 1575, 1579 (Fed.Cir.1991) (“The purpose of the best mode requirement is to restrain inventors from applying for a patent while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.”) (emphasis in original). In Randomex the court reiterated that “[i]t is concealment of the best mode of practicing the claimed invention that section 112 ¶ 1 is designed to prohibit.” 849 F.2d at 588. There was no evidence that either Mr. Auriol or Mr. Bornes possessed and concealed a better embodiment than was described in the specification.
The general statement that an odd number is better than an even number is not a statement of a better mode than the preferred embodiment shown in the specification. There was no evidence of intentional concealment of a better mode than was disclosed. The preferred embodiment’s disclosure of a three-gro'oye tube is adequate to enable a person skilled in this art to practice the best mode. The judgment of invalidity on this ground is reversed.
II
ABANDONMENT
Broetje on cross-appeal states that the '339 patent was abandoned by failure to pay the issue fee. The district court rejected this argument, finding that AHG had “established, by a preponderance of the evidence, that the issue fee was paid, and, hence, that the '339 patent was not abandoned.” Oct. Op. at 391.
Broetje again argues that the issue fee was not paid, based on the following events: On January 23, 1991, AHG’s attorney sent a check to the Patent and Trademark Office for “SN 07/447,501—Issue Fee.” The check did not clear, for “insufficient funds.” On May 8, 1991, the PTO notified the attorney of the returned check, and advised that “the Applicant may wish to consider filing a petition to the Commissioner under 37 CFR 1.316(b) or (c) requesting the acceptance of delayed payment of the issue fee.” On May 15, 1991 the attorney wrote to AHG, explaining the situation and stating that “the matter was immediately rectified.”
All ensuing events are consistent with payment of the fee, for the patent was not withdrawn by the PTO, and the PTO accepted all subsequent maintenance fees. Broetje’s only argument is that the record does not contain a “petition to revive an abandoned application.” However, there is no record of an abandoned application. The district court found that the issue fee was paid and therefore the '339 patent was not abandoned. Clear error has not been shown in this finding and conclusion.
Conolusion
The judgment of invalidity on best mode grounds is reversed. The ruling that the '339 patent was not abandoned is affirmed. The case is remanded for further proceedings.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED

. Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc., 817 F.Supp.2d 394 (D.Del.2011) ("Sept. Op.”); Ateliers de la HauteGaronne v. Broetje Automation-USA Inc., No. 09-598 (D.Del.2011) (order granting summary judgment for failure to disclose best mode) ("Order”).

. Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc., 819 F.Supp.2d 389 (D.Del.2011) (“Oct. Op.”).

. Broetje states that these decisions of precedent have been superseded by conflicting panel decisions. That is incorrect, for if conflict had arisen, the rule is that the earlier panel decision controls unless overruled en banc. Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed.Cir.1988).
Judge Prost in dissent argues that "Sherwood, not In re Gay, is the precedent we must follow because it is the latest opinion of the [CCPA].” Dissent at 3 n.l. However, In re Gay was cited by the CCPA after Sherwood. See U.S. Dep't of Energy v. Daugherty, 687 F.2d 438, 446 (CCPA 1982) ("[A] strict 'best mode’ issue involves knowledge of facts peculiarly within the possession and control of Daugherty, specifically, the state of mind of the Daugherty patentees at the time they filed their application. Were they deliberately concealing something? See In re Gay, [309 F.2d 769 (CCPA 1962)].”).